## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

BELL NORTHERN RESEARCH, LLC

               Plaintiff,

     v.

HP INC.,

               Defendant.

**Civil Action No. 6:21-cv-939**

**JURY TRIAL DEMANDED**

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Bell Northern Research, LLC ("BNR" or "Plaintiff"), for its Complaint against Defendant HP Inc. ("HP" or "Defendant"), alleges the following:

## NATURE OF THE ACTION

1.　　This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*.

## THE PARTIES

2.　　Plaintiff BNR is a limited liability company organized under the laws of the State of Delaware with a place of business at 401 North Michigan Avenue, Chicago, Illinois 60611.

3.　　Upon information and belief, Defendant HP Inc. is a Delaware corporation with a principal place of business at 1501 Page Mill Road, Palo Alto, California 94304. Defendant maintains a regular and established place of business at 3800 Quick Hill Road #100, Austin, Texas 78728, and is authorized to do business in Texas and may be served through its registered agent CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

## JURISDICTION AND VENUE

4.      This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code.

5.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

6.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b).  Upon information and belief, Defendant has a permanent and continuous presence in, has committed acts of infringement in, and maintains regular and established places of business in this District. Defendant has committed acts of direct and indirect infringement in this judicial district including using and purposefully transacting business involving the Accused Products in this judicial district such as by sales to one or more customers in the State of Texas including in the Western District of Texas, and maintaining at least one regular and established place of business in this District. For example, Defendant maintains a regular and established place of business at 3800 Quick Hill Road #100, Austin, Texas 78728.

7.      HP is additionally subject to this Court's general and specific personal jurisdiction at least because HP has sufficient minimum contacts within the State of Texas and this District, pursuant to due process and/or the Texas Long Arm Statute, Tex. Civ. Prac. & Rem Code § 17.042. Upon information and belief, Defendant is subject to this Court's general and specific personal jurisdiction because Defendant regularly conducts and solicits business within the State of Texas and within this District, and because Plaintiff's causes of action arise directly from Defendant's business contacts and other activities in the State of Texas and this District.

## BACKGROUND

8.      The Asserted Patents come from a rich pedigree dating back to the late 19th century.  This is when Bell Labs sprang to life from the combined efforts of AT&T and Western Electric.  Bell Labs is one of America's greatest technology incubators, and paved the way for

many technological advances we know and use today, including the transistor, several kinds of lasers, the UNIX operating system, and computer languages such as C++.  In total, Bell Labs received nine Nobel Prizes for its work over the years.

9.      Eventually the Bell system broke up and spawned several new companies.  They included telecommunications powerhouses Lucent and Agere Systems.  Lucent was absorbed by Nokia, while Agere Systems was acquired by LSI, then Avago, and ultimately renamed Broadcom.  The Bell system also spun off Northern Electric which led to the creation of a research lab known as BNR.  This lab grew to host thousands of engineers in offices around the globe.  One of those was an 800,000-square-foot campus in Richardson, Texas.

10.      Collectively, these companies spurred a digital revolution in telecommunications, starting with the first digital telephone switch in 1975.  They continued to push the industry to new heights in the late-80's, when BNR announced the desire to create a global fiber optic network (called "FiberWorld").  Its goal was to give users easy, reliable, and fast access to a variety of multimedia services.  To realize this vision, Bell Labs and subsequent innovators made numerous breakthroughs in laser, integrated circuit, photodetector, amplifier, and waveguide designs.  These advancements led to the modern fiber optic systems we use today.

11.      This work naturally evolved to include cellular telecommunications as well.  On May 6, 1992, BNR VP George Brody—along with executives from Bell Cellular and Northern Electric—made the first Canada-US digital cellular call.  It stretched from Toronto, Ontario to Fort Worth, Texas.

12.      Eventually, Nortel Networks absorbed BNR.  Although Nortel was ultimately unsuccessful in its bid to supply digital telecommunications and networking solutions to the

market, some Bell Labs and Nortel alumni decided to reenergize BNR in 2017.  Today it is the successor in interest to many of the key telecommunications technologies.

13.     The BNR Patent portfolio comprises hundreds of patents that reflect important developments in telecommunications that were invented and refined by leading technology research companies, including Agere, LSI, and Broadcom.  These include U.S. Patent Nos. RE 48,629, 8,416,862, 7,564,914, 6,963,129, and 6,858,930 (collectively, these patents comprise the "Asserted Patents").

14.     Portions of the BNR portfolio are presently licensed and/or were previously licensed to leading technology companies.

15.     BNR brings this action to put a stop to HP's unauthorized and unlicensed use of the Asserted Patents.

**U.S. Patent No. RE 48,629**

16.     Jason Alexander Trachewsky and Rajendra T. Moorti are the inventors of U.S. Patent No. RE 48,629 (the '629 patent).  A true and correct copy of the '629 patent is attached as Exhibit A.

17.     The '629 patent resulted from the pioneering efforts of Messrs. Trachewsky and Moorti (hereinafter "the Inventors") in the general area of wireless communication systems and more particularly to long training sequences of minimum peak-to-average power ratio which may be used in legacy systems.  At the time of these pioneering efforts, conventionally implemented technology did not sufficiently address the problem of different wireless devices compliant with different standards or different versions of the same standard while enabling backward compatibility with legacy devices that avoids collisions.  For example, in the 802.11a and 802.11g standards, each data packet starts with a preamble which includes a short training

sequence followed by a long training sequence.  The short and long training sequences are used for synchronization between the sender and the receiver.  The long training sequence of 802.11a and 802.11g is defined such that each of sub-carriers -26 to +26, except for the subcarrier 0 which is set to 0, has one binary phase shift keying constellation point, either +1 or -1.

18.     There existed a need to create a long training sequence of minimum peak-to-average ratio that uses more sub-carriers without interfering with adjacent channels.

19.     For example, the Inventors developed a wireless communications device, comprising: a signal generator that generates an extended long training sequence; and an Inverse Fourier Transformer operatively coupled to the signal generator, wherein the Inverse Fourier Transformer processes the extended long training sequence from the signal generator and provides an optimal extended long training sequence with a minimal peak-to-average ratio, and wherein at least the optimal extended long training sequence is carried by a greater number of subcarriers than a standard wireless networking configuration for an Orthogonal Frequency Division Multiplexing scheme, wherein the optimal extended long training sequence is carried by exactly 56 active sub-carriers, and wherein the optimal extended long training sequence is represented by encodings for indexed sub-carriers -28 to +28, excluding indexed sub-carrier 0 which is set to zero, as follows:

| Sub-carrier | −28 | −27 | −26 | −25 | −24 | −23 | −22 |
|---|---|---|---|---|---|---|---|
| Encoding | +1 | +1 | +1 | +1 | −1 | −1 | +1 |
| Sub-carrier | −14 | −13 | −12 | −11 | −10 | −9 | −8 |
| Encoding | +1 | +1 | +1 | −1 | −1 | +1 | +1 |
| Sub-carrier | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| Encoding | +1 | −1 | −1 | +1 | +1 | −1 | +1 |
| Sub-carrier | 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| Encoding | +1 | +1 | −1 | −1 | +1 | −1 | +1 |

| Sub-carrier | −21 | −20 | −19 | −18 | −17 | −16 | −15 |
|---|---|---|---|---|---|---|---|
| Encoding | +1 | −1 | +1 | −1 | +1 | +1 | +1 |
| Sub-carrier | −7 | −6 | −5 | −4 | −3 | −2 | −1 |
| Encoding | −1 | +1 | −1 | +1 | +1 | +1 | +1 |
| Sub-carrier | 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| Encoding | −1 | +1 | −1 | −1 | −1 | −1 | −1 |
| Sub-carrier | 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| Encoding | −1 | +1 | +1 | +1 | +1 | −1 | −1. |

20. One advantage of the patented invention is that it provides an expanded long training sequence of minimum peak-to-average power ratio thereby decreasing power back-off. (*See* '629 patent at 4:15-17.)

21. Another advantage of the invention is that expanded long training sequence may be used by 802.11a and 802.11g devices for estimating the channel impulse response and by a receiver for estimating the carrier frequency offset between the transmitter clock and receiver clock. (*See* '629 patent at 4:17-21.)

**U.S. Patent No. 8,416,862**

22. Carlos Aldana and Joonsuk Kim are the inventors of U.S. Patent No 8,416,862 ("the '862 patent"). A true and correct copy of the '862 patent is attached as Exhibit B.

23. The '862 patent resulted from the pioneering efforts of Messrs. Aldana and Kim (hereinafter "the Inventors") in the area of wireless communications systems using beamforming. These efforts resulted in the development of a method and system for the efficient feedback of channel information in a closed loop beamforming wireless communication system.

24. At the time of these pioneering efforts, the most widely implemented technology used to address reduced beam forming feedback information for wireless communications was to

reduce the size of the feedback.  For instance, in a 2x2 MIMO wireless communication, the feedback needs four elements that are all complex Cartesian coordinate values V11 V12;V21 V22.  In general, Vik=aik+j*bik, where aik and bik are values between -1, 1.  Thus, with 1 bit express per each element for each of the real and imaginary components, aik and bik can be either -1/2 or +1/2, which requires 4x2x1=8 bits per tone. With 4 bit expressions per each element of V(f) in an orthogonal frequency division multiplexing (OFDM) 2x2 MIMO wireless communication, the number of bits required is 1728 per tone (e.g., 42*54*4=1728, 4 elements per tone, 2 bits for real and imaginary components per tone, 54 data tones per frame, and 4 bits per element), which requires overhead for a packet exchange that is too large for practical applications.

25.     The Inventors conceived of the invention claimed in the '862 patent as a way to reduce beamforming feedback information for wireless communications.

26.     For example, the Inventors developed a method for feeding back transmitter beamforming information from a receiving wireless communication device to a transmitting wireless communication device, the method comprising:  the receiving wireless communication device receiving a preamble sequence from the transmitting wireless device; the receiving wireless device estimating a channel response based upon the preamble sequence; the receiving wireless device determining an estimated transmitter beamforming unitary matrix (V) based upon the channel response and a receiver beamforming unitary matrix (U); the receiving wireless device decomposing the estimated transmitter beamforming unitary matrix (V) to produce the transmitter beamforming information; and the receiving wireless device wirelessly sending the transmitter beamforming information to the transmitting wireless device.

27.     One advantage of the patented invention is a reduction of beam forming feedback information for wireless communications.  (*See* '862 patent at 3:49-51.)

**U.S. Patent No. 7,564,914**

28.     Christopher J. Hansen, Carlos H. Aldana, and Joonsuk Kim are the inventors of U.S. Patent No. 7,564,914 ("the '914 patent").  A true and correct copy of the '914 patent is attached as Exhibit C.

29.     The '914 patent resulted from the pioneering efforts of Messrs. Hansen, Aldana, and Kim (hereinafter "the Inventors") in the general area of wireless networking.

30.     For example, the Inventors developed a method for communicating information in a communication system, the method comprising: transmitting data via a plurality of radio frequency (RF) channels utilizing a plurality of transmitting antennas; receiving feedback information via at least one of said plurality of RF channels; modifying a transmission mode based on said feedback information; receiving said feedback information comprising channel estimates based on transmission characteristics of said transmitted data via at least one of said plurality of transmitting antennas; and deriving said feedback information from mathematical matrix decomposition of said channel estimates.

31.     One advantage of the '914 patent is the more precise estimation of channel characteristics.  (*See* '914 patent at 18:12-15.)

32.     Another advantage of the patented invention is that it minimizes the quantity of feedback information and in turn reduces overhead.  (*See* '914 patent at 18:35-39.)

33.     Further advantages include higher information transfer rates, and more effective beamforming on transmitted signals.  (*See* '914 patent at 18:40-45.)

**U.S. Patent No. 6,963,129**

34.     Thomas Evans, Stan Mihelcic, Leah M. Miller, Kumar Nagarajan, and Edwin M. Fulcher are the inventors of U.S. Patent No. 6,963,129 ("the '129 patent").  A true and correct copy of the '129 patent is attached as Exhibit D.

35.     The '129 patent resulted from the pioneering efforts of Messrs. Evans, Mihelcic, Nagarajan, and Fulcher and Ms. Miller (hereinafter "the Inventors") in the area of heat spreader and package design.  The Inventors conceived of the invention claimed in the '129 patent as a way to implement better heat transfer mechanisms in relation to semiconductor packages.

36.     For example, the Inventors developed a heat spreader assembly, comprising: a single, unibody heat spreader configured to extend across substantially the entire first surface of at least two spaced integrated circuits opposite a second surface of the integrated circuits having a bonding pad; adhesive placed between the heat spreader and the first surface for securing the heat spreader to the first surface of the integrated circuits at a spaced distance above at least one passive device arranged in the area between the spaced integrated circuits; and a second heat spreader interposed between the heat spreader and only of the at least two spaced integrated circuits.

37.     Among the advantages of the '129 patented invention is that it provides for heat spreader assemblies having improved thermal characteristics. (*See* '129 patent at 2:23-26.)

**U.S. Patent No. 6,858,930**

38.     Leah M. Miller and Kishor Desal are the inventors of U.S. Patent No. 6,858,930 ("the '930 patent").  A true and correct copy of the '930 patent is attached as Exhibit E.

39.     The '930 patent resulted from the pioneering efforts of Ms. Miller and Mr. Kishor (hereinafter "the Inventors") in the area of heat spreader and package design.

40.     The Inventors conceived of the invention claimed in the '930 patent as a way to address the problems of heat production and package flexibility that constrain certain aspects of package design.

41.     For example, the Inventors developed a multi chip package, compromising: a package substrate having a first side and an opposing second side, the first side for receiving package electrical connections, integrated circuits each having a first side and an opposing second side, the first side of each of the integrated circuits electrically connected and structurally connected to the second side of the package substrate, heat spreaders each having a first side and an opposing second side, the first side of each of the heat spreaders disposed adjacent the second side of the integrated circuits, where one each of the heat spreaders is associated with one each of the integrated circuits, a single stiffener having a first side and an opposing second side, the stiffener covering all of the integrated circuits and heat spreaders, the first side of the stiffener disposed adjacent the second side of the heat spreaders, and discrete components electrically connected to the second side of the package substrate and coplanar with the integrated circuits.

42.     One advantage of the '930 patented invention is that it provides adequate heat dissipation for a multi chip module.  (*See* '930 patent at 2:15-20.)

43.     Another advantage of the '930 patented invention is that it provides structural support for a multi chip module.  (*See* '930 patent at 2:15-20.)

### DEFENDANT'S ACTIVITIES

44.     Defendant is an information technology company that develops, sells, repairs, and supports personal computers and related products and services.

45.     Defendant designs, develops, manufactures, and sells personal computers, including laptop computers.  Defendant's personal computers include HP ProBook computers, such as HP ProBook x360 435 G8 Notebook computers, HP ProBook 430 G8 Notebook

computers, HP ProBook 440 G8 Notebook computers, HP ProBook 450 G8 Notebook computers, HP ProBook 430 G8 Notebook computers, HP ENVY computers such as HP ENVY x360 computers and HP ENVY All-in-One computers, HP Pavilion computers such as HP Pavilion Laptop 15Z computers, HP Pavilion Gaming Laptop 15 computers, and HP Pavilion Gaming Laptop 15T computers, HP Chromebook computers such as HP Chromebook 11A G8 computers and HP Chromebook 14A G5 computers, OMEN computers such as OMEN 25L Desktop computers and OMEN 30L Desktop computers, HP All-in-One 27 computers, HP Slim Desktop computers, HP ZBook Fury 17 G7 computers, and Victus computers (the "Accused Instrumentalities").

## <u>COUNT I – INFRINGEMENT OF U.S. PATENT RE 48,629</u>

46.     The allegations set forth in the foregoing paragraphs 1 through 45 are incorporated into this First Claim for Relief.

47.     On July 6, 2021, the '629 patent was duly and legally reissued by the United States Patent and Trademark Office under the title "Backward-compatible Long Training Sequences for Wireless Communication Networks."

48.     BNR is the assignee and owner of the right, title and interest in and to the '629 patent, including the right to assert all causes of action arising under the Patent and the right to any remedies for infringement of it.

49.     Upon information and belief, HP has and continues to directly or indirectly infringe one or more claims of the '629 patent, including at least claim 1, by selling, offering to sell, making, using, and/or providing and causing to be used instrumentalities that operate according to the 802.11n standard, including HP ProBook x360 435 G8 Notebook computers, HP ProBook 430 G8 Notebook computers, HP ProBook 440 G8 Notebook computers, HP

ProBook 450 G8 Notebook computers, HP ProBook 430 G8 Notebook computers, HP ENVY x360 computers, HP ENVY All-in-One computers, HP Pavilion Laptop 15Z computers, HP Pavilion Gaming Laptop 15T computers, HP Chromebook 11A G8 computers, HP Chromebook 14A G5 computers, OMEN 25L Desktop computers, OMEN 30L Desktop computers, HP All-in-One 27 computers, and HP Slim Desktop computers (the "'629 Accused Instrumentalities").

50.     The 802.11n standard was introduced on or about October 2009, and provides a definition for a High Throughput Long Training Field ("HT-LTF"). The first part of the HT-LTF "consists of one, two, or four HT-LTFs that are necessary for demodulation of the HT-Data portion of the PPDU" (i.e., Protocol Data Unit). The 802.11n standard provides a specific HT-LTF sequence that is transmitted in the case of 20 MHz operation. (*See* 802.11-2016 at 19.3.9.4.6 or 802.11-2009 at 20.3.9.4.6.)

51.     Upon information and belief after a reasonable investigation, at least the '629 Accused Instrumentalities infringe the '629 patent. The '629 Accused Instrumentalities are wireless communication devices that include a signal generator that generates an extended long training sequence. For instance, the HP ProBook x360 435 G8 Notebook is 802.11n compliant and, therefore, uses a specific HT-LTF sequence that is transmitted in the case of 20 MHz operation. (*See* 802.11-2016 at 19.3.9.4.6 or 802.11-2009 at 20.3.9.4.6; *see, e.g.*, https://www.hp.com/us-en/shop/pdp/hp-probook-x360-435-g8-notebook-pc-p-38y41ut-aba-1.) This corresponds to the long training sequence with minimum peak-to-average power ratio described in the '629 patent. (*See id.*) Devices operating in accordance with the 802.11n standard (known as "wireless stations" or "STAs") must be able to generate the HT-LTF described.

52.     The '629 Accused Instrumentalities include an Inverse Fourier Transformer operatively coupled to the signal generator.  For instance, the HP ProBook x360 435 G8 Notebook is 802.11n compliant and, therefore, uses an encoding process that requires a reverse Fourier transformer.  (*See* 802.11-2016 and 19.3.4(b) or 802.11-2009 at 20.3.4(b); *see, e.g.*, https://www.hp.com/us-en/shop/pdp/hp-probook-x360-435-g8-notebook-pc-p-38y41ut-aba-1.)

53.     The '629 Accused Instrumentalities include an Inverse Fourier Transformer (as explained above) that processes the extended long training sequence from the signal generator and provides an optimal extended long training sequence with a minimal peak-to-average ratio. For instance, the HP ProBook x360 435 G8 Notebook is 802.11n compliant and, therefore, processes the HT-LTF training sequence from the signal generator.  (*See* 802.11-2016 at Figure 19-9 and 19.3.9.4.6; *see, e.g.*, https://www.hp.com/us-en/shop/pdp/hp-probook-x360-435-g8-notebook-pc-p-38y41ut-aba-1.)  The HP ProBook x360 435 G8 Notebook also provides an optimal HT-LTF training sequence with a minimal peak-to-average ratio.  *See* 802.11-2016 at 19.3.9.4.6 at Equation 19-23; *see, e.g.*, https://www.hp.com/us-en/shop/pdp/hp-probook-x360-435-g8-notebook-pc-p-38y41ut-aba-1.)

54.     The '629 Accused Instrumentalities also include an optimal extended long training sequence that is carried by a greater number of subcarriers than a standard wireless networking configuration for an OFDM scheme.  For instance, the HP ProBook x360 435 G8 Notebook is 802.11n compliant, and therefore includes an optimal HT-LTF training sequence that is carried by a greater number of subcarriers than is standard for an OFDM scheme.  (*See* 802.11-2016 at 19.3.9.4.6 at Equation 19-23 and additional subcarriers noted therein as compared to L-LT; *see, e.g.*, https://www.hp.com/us-en/shop/pdp/hp-probook-x360-435-g8-notebook-pc-p-38y41ut-aba-1.)

55.     The '629 Accused Instrumentalities also include an optimal extended long training sequence that is carried by exactly 56 active subcarriers.  For instance, the HP ProBook x360 435 G8 Notebook is 802.11n compliant and, therefore, includes an optimal HT-LTF training sequence that is carried by 56 active subcarriers.  (*See* 802.11-2016 at 19.3.9.4.6; *see, e.g.*, https://www.hp.com/us-en/shop/pdp/hp-probook-x360-435-g8-notebook-pc-p-38y41ut-aba-1.)

56.     The '629 Accused Instrumentalities also include an optimal extended long training sequence (as explained above) that is represented by encodings for indexed subcarriers -28 to +28, excluding indexed subcarrier 0 which is set to zero, as follows:

| Sub-carrier | −28 | −27 | −26 | −25 | −24 | −23 | −22 |
|---|---|---|---|---|---|---|---|
| Encoding | +1 | +1 | +1 | +1 | −1 | −1 | +1 |
| Sub-carrier | −14 | −13 | −12 | −11 | −10 | −9 | −8 |
| Encoding | +1 | +1 | +1 | −1 | −1 | +1 | +1 |
| Sub-carrier | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| Encoding | +1 | −1 | −1 | +1 | +1 | −1 | +1 |
| Sub-carrier | 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| Encoding | +1 | +1 | −1 | −1 | +1 | −1 | +1 |
| Sub-carrier | −21 | −20 | −19 | −18 | −17 | −16 | −15 |
| Encoding | +1 | −1 | +1 | −1 | +1 | +1 | +1 |
| Sub-carrier | −7 | −6 | −5 | −4 | −3 | −2 | −1 |
| Encoding | −1 | +1 | −1 | +1 | +1 | +1 | +1 |
| Sub-carrier | 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| Encoding | −1 | +1 | −1 | −1 | −1 | −1 | −1 |
| Sub-carrier | 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| Encoding | −1 | +1 | +1 | +1 | +1 | −1 | −1. |

57.     For instance, the HP ProBook x360 435 G8 Notebook is 802.11n compliant and, therefore, includes an optimal HT-LTF training sequence that is represented by encodings for indexed subcarriers -28 to +28, excluding indexed subcarrier 0 according to the chart above. (*See* 19.3.9.4.6 at Equation 19-23; *see, e.g.*, https://www.hp.com/us-en/shop/pdp/hp-probook-x360-435-g8-notebook-pc-p-38y41ut-aba-1.)

58.     HP has infringed and is infringing, individually and/or jointly, either literally or under the doctrine of equivalents, at least claim 1 of the '629 patent in violation of 35 U.S.C. §§ 271, *et seq.*, directly or indirectly, by making, using, offering for sale, selling, offering for lease,

leasing in the United States, and/or importing into the United States without authority or license, the '629 Accused Instrumentalities.

59.     HP knew or should have known of the '629 patent but was willfully blind to the existence of the patent.  HP has had actual knowledge of the '629 patent since receiving a notice letter from BNR dated August 6, 2021.

60.     Upon information and belief, since HP had knowledge of the '629 patent, HP has induced and continues to induce others to infringe at least claim 1 of the '629 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to HP's partners and customers, whose use of the '629 Accused Instrumentalities constitutes direct infringement of at least claim 1 of the '629 patent.

61.     In particular, HP's actions that aid and abet others such as their partners and customers to infringe include marketing the '629 Accused Instrumentalities to its customers, distributing the '629 Accused Instrumentalities and providing materials and/or services to users of the '629 Accused Instrumentalities, including providing instructions to users on how to use the functionality of the '629 patent on its website and elsewhere.  (*See, e.g.,* https://support.hp.com/us-en/product/hp-probook-x360-435-g8-notebook-pc/38492692.)

62.     Upon information and belief, HP has engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because HP has had actual knowledge of the '629 patent and that its acts were inducing infringement of the '629 patent since HP has had knowledge of the '629 patent.

63.     HP's infringement of the '629 patent is exceptional and entitles BNR to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

64.     BNR has been damaged by HP's infringement of the '629 patent and will continue to be damaged unless HP is enjoined by this Court.  BNR has suffered and continues to suffer irreparable injury for which there is no adequate remedy at law.  The balance of hardships favors BNR, and public interest is not disserved by an injunction.

65.     BNR is entitled to recover from HP all damages that BNR has sustained as a result of HP's infringement of the '629 patent, including without limitation and/or not less than a reasonable royalty.

### COUNT II– INFRINGEMENT OF U.S. PATENT NO. 8,416,862

66.     The allegations set forth in the foregoing paragraphs 1 through 65 are incorporated into this Second Claim for Relief.

67.     On April 9, 2013, the '862 patent was duly and legally issued by the United States Patent and Trademark Office under the title "Efficient Feedback of Channel Information in a Closed Loop Beamforming Wireless Communications System."

68.     BNR is the assignee and owner of the right, title and interest in and to the '862 patent, including the right to assert all causes of action arising under the patent and the right to any remedies for infringement of it.

69.     Upon information and belief, HP has and continues to directly or indirectly infringe one or more claims of the '862 patent, including at least claims 1 and 9-12, by selling, offering to sell, making, using, and/or providing and causing to be used instrumentalities that operate according to the 802.11ac standard, including personal computers, such as HP ProBook x360 435 G8 Notebook computers, HP ProBook 430 G8 Notebook computers, HP ProBook 440 G8 Notebook computers, HP ProBook 450 G8 Notebook computers, HP ProBook 430 G8 Notebook computers, HP ENVY x360 computers, HP ENVY All-in-One computers, HP Pavilion Laptop 15Z computers, HP Pavilion Gaming Laptop 15T computers, HP Chromebook

11A G8 computers, HP Chromebook 14A G5 computers, OMEN 25L Desktop computers, OMEN 30L Desktop computers, HP All-in-One 27 computers, and HP Slim Desktop computers (the "'862 Accused Instrumentalities").

70.     The 802.11ac standard was introduced on or about December 2013, and provides a definition and standardization for channel sounding for beamforming for Multiple Input Multiple Output ("MIMO") RF radio links, including how a receiving wireless device communicates channel sounding to a base station.  Beamforming requires the use of a steering matrix that improves the reception to the beamformee. The 802.11ac standard provides a specific way to compress the beamforming feedback matrix by the beamformee, and how to determine and decompose the estimated transmitter beamforming unitary matrix and compressed into angles for efficient transmission to the beamformer, which generates a next steering matrix.  (*See* 802.11-2016 at 19.3.12.1.)

71.     Upon information and belief after a reasonable investigation, at least the '862 Accused Instrumentalities infringe the '862 patent.  The '862 Accused Instrumentalities provide a method for feeding back transmitter beamforming information from a receiving wireless communication device to a transmitting wireless communication device.  For instance, the HP ProBook x360 435 G8 Notebook is 802.11ac compliant and therefore provides a compressed beamforming feedback matrix to a beamformer.  (*See, e.g.*, 802.11-2016 at 19.3.12.1; https://www.hp.com/us-en/shop/pdp/hp-probook-x360-435-g8-notebook-pc-p-38y41ut-aba-1.)

72.     The '862 Accused Instrumentalities, for example, receive a preamble sequence from a transmitting wireless device.  For instance, the HP ProBook x360 435 G8 Notebook is an 802.11ac compliant receiver and, therefore, receives a PHY preamble with HT-LTFs from a

beamformer.  (*See, e.g.*, 802.11-2016 at 19.3.13.1; https://www.hp.com/us-en/shop/pdp/hp-probook-x360-435-g8-notebook-pc-p-38y41ut-aba-1.)

73.     The '862 Accused Instrumentalities include estimating a channel response based upon the preamble sequence.  For instance, the HP ProBook x360 435 G8 Notebook is an 802.11ac compliant wireless device and, therefore, estimates a channel response as a result of receiving the HT-LTF's which are part of the PHY preamble.  (*See, e.g.*, 802.11-2016 at 19.3.13.1; https://www.hp.com/us-en/shop/pdp/hp-probook-x360-435-g8-notebook-pc-p-38y41ut-aba-1.)

74.     The '862 Accused Instrumentalities include determining an estimated transmitter beamforming unitary matrix (V) based upon the channel response and a receiver beamforming unitary matrix (U).  For instance, the HP ProBook x360 435 G8 Notebook is an 802.11ac compliant wireless device, and therefore calculates a beamforming unitary matrix V based on a singular value decomposition of the channel response H=UDV*, where D is a diagonal matrix and U is a receiver unitary matrix.  (*See, e.g.*, 802.11-2016 at 19.3.12.3.6; https://www.hp.com/us-en/shop/pdp/hp-probook-x360-435-g8-notebook-pc-p-38y41ut-aba-1.)

75.     The '862 Accused Instrumentalities include decomposing the estimated transmitter beamforming unitary matrix (V) to produce the transmitter beamforming information.  For instance, the HP ProBook x360 435 G8 Notebook is an 802.11ac compliant wireless device and, therefore, determines beamforming feedback matrices and compresses those into the form of angles.  (*See, e.g.*, 802.11-2016 at 19.3.12.3.6; https://www.hp.com/us-en/shop/pdp/hp-probook-x360-435-g8-notebook-pc-p-38y41ut-aba-1.)

76.     The '862 Accused Instrumentalities include wirelessly sending the transmitter beamforming information to the transmitting wireless device.  For instance, the HP ProBook

x360 435 G8 Notebook is an 802.11ac compliant wireless device and, therefore, wirelessly sends the compressed beamformed matrices to the beamformer.  (*See, e.g.*, 802.11-2016 at 19.3.12.3.6; https://www.hp.com/us-en/shop/pdp/hp-probook-x360-435-g8-notebook-pc-p-38y41ut-aba-1.)

77.     HP has infringed and is infringing, individually and/or jointly, either literally or under the doctrine of equivalents, at least claims 1 and 9-12, of the '862 patent in violation of 35 U.S.C. §§ 271, *et seq.*, directly and/or indirectly, by making, using, offering for sale, selling, offering for lease, leasing in the United States, and/or importing into the United States without authority or license, the '862 Accused Instrumentalities.

78.     Upon information and belief, HP has had knowledge of the '862 patent, at least since receiving notice letters from BNR dated February 16, 2018 and January 13, 2021.

79.     Upon information and belief, since HP had knowledge of the '862 patent, HP has induced and continues to induce others to infringe at least claims 1 and 9-12 of the '862 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to HP's partners and customers, whose use of the '862 Accused Instrumentalities constitutes direct infringement of at least claims 1 and 9-12 of the '862 patent.

80.     In particular, HP's actions that aid and abet others such as their partners and customers to infringe include marketing the '862 Accused Instrumentalities to its customers, distributing the '862 Accused Instrumentalities to its customers and providing materials and/or services to users of the '862 Accused Instrumentalities including providing instructions to users on how to use the functionality of the '862 patent on its website and elsewhere.  (*See, e.g.,* https://support.hp.com/us-en/product/hp-probook-x360-435-g8-notebook-pc/38492692.)

81.     Upon information and belief, HP has engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because HP has had actual knowledge of the '862 patent and that its acts were inducing infringement of the '862 patent since HP has had knowledge of the '862 patent.

82.     HP's infringement of the '862 patent is exceptional and entitles BNR to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

83.     BNR has been damaged by HP's infringement of the '862 patent and will continue to be damaged unless HP is enjoined by this Court.  BNR has suffered and continues to suffer irreparable injury for which there is no adequate remedy at law.  The balance of hardships favors BNR, and public interest is not disserved by an injunction.

84.     BNR is entitled to recover from HP all damages that BNR has sustained as a result of HP's infringement of the '862 patent, including without limitation and/or not less than a reasonable royalty.

### COUNT III – INFRINGEMENT OF U.S. PATENT NO. 7,564,914

85.     The allegations set forth in the foregoing paragraphs 1 through 84 are incorporated into this Third Claim for Relief.

86.     On July 21, 2009, the '914 patent was duly and legally issued by the United States Patent and Trademark Office under the title "Method and System for Frame Formats for MIMO Channel Measurement Exchange."

87.     BNR is the assignee and owner of the right, title and interest in and to the '914 patent, including the right to assert all causes of action arising under the patent and the right to any remedies for infringement of it.

88.     Upon information and belief, HP  has and continues to directly or indirectly infringe one or more claims of the '914 patent, including at least claims 1 and 25, by selling, offering to sell, making, using, and/or providing and causing to be used instrumentalities that operate according to the 802.11ac standard, including HP ProBook x360 435 G8 Notebook computers, HP ProBook 430 G8 Notebook computers, HP ProBook 440 G8 Notebook computers, HP ProBook 450 G8 Notebook computers, HP ProBook 430 G8 Notebook computers, HP ENVY x360 computers, HP ENVY All-in-One computers, HP Pavilion Laptop 15Z computers, HP Pavilion Gaming Laptop 15T computers, HP Chromebook 11A G8 computers, HP Chromebook 14A G5 computers, OMEN 25L Desktop computers, OMEN 30L Desktop computers, HP All-in-One 27 computers, and HP Slim Desktop computers (the "'914 Accused Instrumentalities")

89.     The 802.11ac standard provides for a "compressed beamforming feedback matrix" and specifies that "[i]n compressed beamforming feedback matrix, the beamformee shall remove the space-time stream CSD in Table 19-10 from the measured channel before computing a set of matrices for feedback to the beamformer."  (*See* 802.11-2016 at 19.3.12.3.6.) Furthermore, "[t]he beamforming feedback matrices, V(k), found by the beamformee are compressed in the form of angles, which are sent to the beamformer." (*Id.*)  Devices implementing the beamforming standardization according to 802.11ac standard must be capable of providing compressed beamforming feedback matrices as set forth above.

90.     On information and belief after a reasonable investigation, the '914 Accused Instrumentalities infringe the '914 patent.  The '914 Accused Instrumentalities provide a method for transmitting data via a plurality of radio frequency (RF) channels utilizing a plurality of transmitting antennas.  For instance, the HP ProBook x360 435 G8 Notebook is an 802.11ac

compliant wireless device that transmits data via a plurality of radio frequency (RF) channels utilizing a plurality of transmitting antennas.  (*See, e.g.*, https://www.hp.com/us-en/shop/pdp/hp-probook-x360-435-g8-notebook-pc-p-38y41ut-aba-1.)

91.     The '914 Accused Instrumentalities receive feedback information via at least one of the plurality of RF channels. For instance, the HP ProBook x360 435 G8 Notebook is an 802.11ac compliant wireless device that receives feedback information via at least one of the plurality of RF channels.  (*See, e.g.,* https://www.hp.com/us-en/shop/pdp/hp-probook-x360-435-g8-notebook-pc-p-38y41ut-aba-1.)

92.     The '914 Accused Instrumentalities modify a transmission mode based on the feedback information.  For instance, the HP ProBook x360 435 G8 Notebook is an 802.11ac compliant wireless device that modifies a transmission mode based on the feedback information. (*See, e.g.*, https://www.hp.com/us-en/shop/pdp/hp-probook-x360-435-g8-notebook-pc-p-38y41ut-aba-1.)

93.     The '914 Accused Instrumentalities receives the feedback information comprising channel estimates based on transmission characteristics of the transmitted data via at least one of the plurality of transmitting antennas.  For instance, the HP ProBook x360 435 G8 Notebook is an 802.11ac compliant wireless device that receives the feedback information comprising channel estimates based on transmission characteristics of the transmitted data via at least one of the plurality of transmitting antennas; and deriving the feedback information from mathematical matrix decomposition of channel estimates.  (*See, e.g.*, https://www.hp.com/us-en/shop/pdp/hp-probook-x360-435-g8-notebook-pc-p-38y41ut-aba-1.)

94.     The '914 Accused Instrumentalities derive the feedback information from mathematical matrix decomposition of channel estimates.  For instance, the HP ProBook x360

435 G8 Notebook is an 802.11ac compliant wireless device that derives the feedback information from mathematical matrix decomposition of channel estimates.  (*See, e.g.*, https://www.hp.com/us-en/shop/pdp/hp-probook-x360-435-g8-notebook-pc-p-38y41ut-aba-1.)

95.     HP has infringed and is infringing, individually and/or jointly, either literally or under the doctrine of equivalents, at least claims 1 and 25 of the '914 patent in violation of 35 U.S.C. §§ 271, *et seq.*, directly or indirectly, by making, using, offering for sale, selling, offering for lease, leasing in the United States, and/or importing into the United States without authority or license, the '914 Accused Instrumentalities.

96.     Upon information and belief, HP has had knowledge of the '914 patent, at least since receiving a notice letter from BNR dated January 13, 2021.

97.     Upon information and belief, since HP  had knowledge of the '914 patent, HP has induced and continues to induce others to infringe at least claims 1 and 25 of the '914 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to HP 's partners and customers, whose use of the '914 Accused Instrumentalities constitutes direct infringement of at least claims 1 and 25 of the '914 patent.

98.     In particular, HP's actions that aid and abet others such as their partners and customers to infringe include marketing the '914 Accused Instrumentalities to its customers, distributing the '914 Accused Instrumentalities and providing materials and/or services to users of the '914 Accused Instrumentalities, including providing instructions to users on how to use the functionality of the '914 patent on its website and elsewhere.  (*See, e.g.*, https://support.hp.com/us-en/product/hp-probook-x360-435-g8-notebook-pc/38492692.)

99.     Upon information and belief, HP has engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because HP has had actual knowledge of the '914 patent and that its acts were inducing infringement of the '914 patent since HP has had knowledge of the '914 patent.

100.    HP's infringement of the '914 patent is exceptional and entitles BNR to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

101.    BNR has been damaged by HP's infringement of the '914 patent and will continue to be damaged unless HP is enjoined by this Court.  BNR has suffered and continues to suffer irreparable injury for which there is no adequate remedy at law.  The balance of hardships favors BNR, and public interest is not disserved by an injunction.

102.    BNR is entitled to recover from HP all damages that BNR has sustained as a result of HP's infringement of the '914 patent, including without limitation and/or not less than a reasonable royalty.

## COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 6,963,129

103.    The allegations set forth in the foregoing paragraphs 1 through 102 are incorporated into this Fourth Claim for Relief.

104.    On November 8, 2005, the '129 patent was duly and legally issued by the United States Patent and Trademark Office under the title "Multi-chip Package Having a Contiguous Heat Spreader Assembly."

105.    BNR is the assignee and owner of the right, title and interest in and to the '129 patent, including the right to assert all causes of action arising under the patent and the right to any remedies for infringement of it.

106.     Upon information and belief, HP has and continues to directly or indirectly infringe one or more claims of the '129 patent, including at least claims 1 and 2, by selling,

offering to sell, making, using, and/or providing and causing to be used instrumentalities that include a heat spreader.  The heat spreader in HP's instrumentalities, including personal computers, such as HP Pavilion Gaming 15 Laptop computers, HP ZBook Fury 17 G7 computers, and Victus computers (the "'129 Accused Instrumentalities") have heat spreader assembly that includes a single, unibody heat spreader.  The single, unibody heat spreader is configured to extend across substantially the entire first surface of at least two spaced integrated circuits opposite a second surface of the integrated circuits having (1) a single, unibody heat spreader configured to extend across substantially the entire first surface of at least two spaced integrated circuits opposite a second surface of the integrated circuits that have a bonding pad; (2) adhesive placed between the heat spreader and the first surface for securing the heat spreader to the first surface of the integrated circuits at a spaced distance above at least one passive device arranged in the area between the spaced integrated circuits; and (3) a second heat spreader interposed between the heat spreader and only one of the at least two spaced integrated circuits.

107.    Upon information and belief after a reasonable investigation, at least the '129 Accused Instrumentalities infringe the '129 patent.  The '129 Accused Instrumentalities include a heat spreader assembly.  For instance, the HP Pavilion Gaming 15 Laptop contains a heat spreader assembly that includes a single, unibody heat spreader configured to extend across substantially the entire first surface of at least two spaced integrated circuits opposite a second surface of the integrated circuits having a bonding pad.  (*See, e.g.*, http://h10032.www1.hp.com/ctg/Manual/c06377664.pdf.)

108.    The '129 Accused Instrumentalities' heat spreader assembly also includes adhesive placed between the heat spreader and the first surface for securing the heat spreader to the first surface of the integrated circuits at a spaced distance above at least one passive device

arranged in the area between the spaced integrated circuits.  For instance, the HP Pavilion Gaming 15 Laptop heat spreader assembly includes adhesive placed between the heat spreader and the first surface for securing the heat spreader to the first surface of the integrated circuits. (*See, e.g.*, http://h10032.www1.hp.com/ctg/Manual/c06377664.pdf.)

109.    More specifically, a transparent adhesive is placed between the heat spreader and the HP Pavilion Gaming 15 Laptop first surface in order to secure the Accused Instrumentalities' heat spreader to the first surface of the integrated circuits.  When assembled, the heat spreader is spaced at a distance above at least one passive device and arranged in the area between the spaced integrated circuits.  (*See, e.g.*, http://h10032.www1.hp.com/ctg/Manual/c06377664.pdf.)

110.    The '129 Accused Instrumentalities' heat spreader assembly also includes a second heat spreader interposed between the heat spreader and only one of the at least two spaced integrated circuits.  For instance, the HP Pavilion Gaming 15 Laptop's heat spreader assembly includes a second heat spreader, which is interposed between the heat spreader and only one of the at least two spaced integrated circuits.  (*See, e.g.*, http://h10032.www1.hp.com/ctg/Manual/c06377664.pdf.)

111.    HP has infringed and is infringing, individually and/or jointly, either literally or under the doctrine of equivalents, at least claims 1 and 2 of the '129 patent in violation of 35 U.S.C. §§ 271, *et seq.*, directly or indirectly, by making, using, offering for sale, selling, offering for lease, leasing in the United States, and/or importing into the United States without authority or license, the '129 Accused Instrumentalities.

112.    Upon information and belief, HP has had knowledge of the '129 patent, at least since receiving a notice letter from BNR dated January 13, 2021.

113.     Upon information and belief, since HP had knowledge of the '129 patent, HP has induced and continues to induce others to infringe at least claims 1 and 2 of the '129 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to HP's partners and customers, whose use of the '129 Accused Instrumentalities constitutes direct infringement of at least claims 1 and 2 of the '129 patent.

114.     In particular, HP's actions that aid and abet others such as their partners and customers to infringe include marketing the '129 Accused Instrumentalities to its customers, distributing the '129 Accused Instrumentalities and providing materials and/or services to users of the '129 Accused Instrumentalities, including providing instructions to users on how to use the functionality of the '129 patent on its website and elsewhere.  (*See, e.g.* https://support.hp.com/us-en/product/hp-pavilion-gaming-15-dk0000-laptop-pc/26122224.)

115.     Upon information and belief, HP has engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because HP has had actual knowledge of the '129 patent and that its acts were inducing infringement of the '129 patent since HP has had knowledge of the '129 patent.

116.     HP's infringement of the '129 patent is exceptional and entitles BNR to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

117.     BNR has been damaged by HP's infringement of the '129 patent and will continue to be damaged unless HP is enjoined by this Court.  BNR has suffered and continues to suffer irreparable injury for which there is no adequate remedy at law.  The balance of hardships favors BNR, and public interest is not disserved by an injunction.

118.     BNR is entitled to recover from HP all damages that BNR has sustained as a result of HP's infringement of the '129 patent, including without limitation and/or not less than a reasonable royalty.

### COUNT V – INFRINGEMENT OF U.S. PATENT NO. 6,858,930

119.     The allegations set forth in the foregoing paragraphs 1 through 118 are incorporated into this Fifth Claim for Relief.

120.     On February 22, 2005, the '930 patent was duly and legally issued by the United States Patent and Trademark Office under the title "Multi Chip Module."

121.     BNR is the assignee and owner of the right, title and interest in and to the '930 patent, including the right to assert all causes of action arising under the patent and the right to any remedies for infringement of it.

122.     Upon information and belief, HP has and continue to directly infringe one or more claims of the '930 patent, including at least claims 1, 2, 5 and 6 by selling, offering to sell, making, using, and/or providing and causing to be used instrumentalities having a multi chip package, including personal computers personal computers, such as HP Pavilion Gaming 15 Laptop computers, HP ZBook Fury 17 G7 computers, and Victus computers (the "'930 Accused Instrumentalities") having, in part, heat spreaders each having a first side and an opposing second side, the first side of each of the heat spreaders disposed adjacent the second side of the integrated circuits, where one each of the heat spreaders is associated with one each of the integrated circuits, a single stiffener having a first side and an opposing second side, the stiffener covering all of the integrated circuits and heat spreaders, the first side of the stiffener disposed adjacent the second side of the heat spreaders.

123.     Upon information and belief and after a reasonable investigation, at least the '930 Accused Instrumentalities infringe the '930 patent.  The '930 Accused Instrumentalities include

a package substrate having a first side and an opposing second side, the first side for receiving package electrical connections.  For instance, the HP Pavilion Gaming 15 Laptop includes a package substrate having a first side and an opposing second side, the first side for receiving package electrical connections.  (*See, e.g.*, http://h10032.www1.hp.com/ctg/Manual/ c06377664.pdf.)

124.    The '930 Accused Instrumentalities also include integrated circuits each having a first side and an opposing second side, the first side of each of the integrated circuits electrically connected and structurally connected to the second side of the package substrate.  For instance, the HP Pavilion Gaming 15 Laptop includes integrated circuits each having a first side and an opposing second side, the first side of each of the integrated circuits electrically connected and structurally connected to the second side of the package substrate.  (*See, e.g.*, http://h10032.www1.hp.com/ctg/Manual/c06377664.pdf.)

125.    The '930 Accused Instrumentalities also include heat spreaders each having a first side and an opposing second side, the first side of each of the heat spreaders disposed adjacent the second side of the integrated circuits, where one each of the heat spreaders is associated with one each of the integrated circuits.  For instance, the HP Pavilion Gaming 15 Laptop includes heat spreaders each having a first side and an opposing second side, the first side of each of the heat spreaders disposed adjacent the second side of the integrated circuits, where one each of the heat spreaders is associated with one each of the integrated circuits.  (*See, e.g.*, http://h10032.www1.hp.com/ctg/Manual/c06377664.pdf.)

126.    The '930 Accused Instrumentalities also include a single stiffener having a first side and an opposing second side, the stiffener covering all of the integrated circuits and heat spreaders, the first side of the stiffener disposed adjacent the second side of the heat spreaders.

For instance, the HP Pavilion Gaming 15 Laptop includes a single stiffener having a first side and an opposing second side, the stiffener covering all of the integrated circuits and heat spreaders, the first side of the stiffener disposed adjacent the second side of the heat spreaders. (*See, e.g.*, http://h10032.www1.hp.com/ctg/Manual/c06377664.pdf.)

127.    The '930 Accused Instrumentalities also include discrete components electrically connected to the second side of the package substrate and coplanar with the integrated circuits. For instance, the HP Pavilion Gaming 15 Laptop includes discrete components electrically connected to the second side of the package substrate and coplanar with the integrated circuits. (*See, e.g.*, http://h10032.www1.hp.com/ctg/Manual/c06377664.pdf.)

128.    HP has infringed and is infringing, individually and/or jointly, either literally or under the doctrine of equivalents, at least claims 1, 2, 5 and 6 of the '930 patent in violation of 35 U.S.C. §§ 271*, et seq.*, directly and/or indirectly, by making, using, offering for sale, selling, offering for lease, leasing in the United States, and/or importing into the United States without authority or license, the '930 Accused Instrumentalities.

129.    Upon information and belief, HP has had knowledge of the '930 patent, at least since receiving a notice letter from BNR dated January 13, 2021.

130.    Upon information and belief, since HP had knowledge of the '930 patent, HP has induced and continues to induce others to infringe the '930 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to HP's partners and customers, whose use of the '930 Accused Instrumentalities constitutes direct infringement.

131.    In particular, HP's actions that aid and abet others such as their partners and customers to infringe include marketing the '930 Accused Instrumentalities to its customers,

distributing the '930 Accused Instrumentalities and providing materials and/or services to users of the '930 Accused Instrumentalities, including providing instructions to users on how to use the functionality of the '930 patent on its website and elsewhere.  (*See, e.g.,* https://support.hp.com/us-en/product/hp-pavilion-gaming-15-dk0000-laptop-pc/26122224.)

132.    Upon information and belief, HP has engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because HP has had actual knowledge of the '930 patent and that its acts were inducing infringement of the '930 patent since HP has had knowledge of the '930 patent.

133.    HP's infringement of the '930 patent is exceptional and entitles BNR to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

134.    BNR has been damaged by HP's infringement of the '930 patent and will continue to be damaged unless HP is enjoined by this Court.  BNR has suffered and continues to suffer irreparable injury for which there is no adequate remedy at law.  The balance of hardships favors BNR, and public interest is not disserved by an injunction.

135.    BNR is entitled to recover from HP all damages that BNR has sustained as a result of HP's infringement of the '930 patent, including without limitation and/or not less than a reasonable royalty.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, BNR demands a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff BNR demands judgment for itself and against HP as follows:

A.    An adjudication that the HP has infringed U.S. Patent Nos. RE 48,629, 8,416,862, 7,564,914, 6,963,129, and 6,858,930;

B.    An award of damages to be paid by HP adequate to compensate BNR for HP's past infringement of U.S. Patent Nos. RE 48,629, 8,416,862, 7,564,914, 6,963,129, and 6,858,930, and any continuing or future infringement through the date such judgment is entered, including interest, costs, expenses, and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

C.    Enhanced damages for willful infringement;

D.    A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of BNR's reasonable attorneys' fees; and

E.    An award to BNR of such further relief at law or in equity as the Court deems just and proper.

Dated: September 10, 2021                    DEVLIN LAW FIRM LLC

                                             */s/ Timothy Devlin*
                                             Timothy Devlin (DE Bar. No. 4241)
                                             1526 Gilpin Avenue
                                             Wilmington, Delaware 19806
                                             Telephone: (302) 449-9010
                                             Facsimile: (302) 353-4251

                                             *Attorneys for Plaintiff Bell Northern Research, LLC*